```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| CHEVRON PUERTO RICO, LLC<br><br>        Plaintiff<br><br>         v.<br><br>JOSÉ L. PÉREZ-ROSADO and HÉCTOR PÉREZ,<br><br>        Defendants | CIVIL NO. 09-2080 (JP) |

## OPINION AND ORDER

Before the Court is Plaintiff Chevron Puerto Rico, LLC's ("Chevron") motion for a temporary restraining order ("TRO") and preliminary injunction (**No. 2**). Plaintiff Chevron, previously known as Texaco Puerto Rico, Inc. and Texaco Puerto Rico, LLC, filed the instant action against Defendants José L. Pérez-Rosado and Héctor Pérez alleging claims for trademark infringement and dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1117 and 1125; breach of contract pursuant to Articles 1044 and 1053 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 2994 and 3017; and the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq*. Plaintiff Chevron requests that the Court enter a TRO and preliminary injunction ordering Defendants to: (1) immediately surrender to Chevron the gasoline service station number 575 located at 2810 Militar Avenue, Isabela, Puerto Rico (the "Station") and all tanks and equipment located therein; (2) immediately comply with all

CIVIL NO. 09-2080 (JP)          -2-

other post-termination covenants of the lease and supply agreements between the parties; and (3) refrain from using the Texaco marks. For the reasons stated herein, Plaintiff's motion for preliminary injunction is **GRANTED**. In light of the Court's immediate granting of the preliminary injunction, the Court **FINDS AS MOOT** Plaintiff's request for a TRO.

I.  **FACTUAL BACKGROUND**

On December 27, 2006, Defendant José L. Pérez-Rosado ("Pérez-Rosado") entered into a lease agreement and supply agreement (the "Agreements") with Plaintiff Chevron. The lease agreement ("Lease") was for the use of real property located at 2810 Militar Avenue, Isabela, Puerto Rico during a period of three years, for the purposes of operating a gasoline service station. The Lease provides for monthly payment by Defendant Pérez-Rosado of $2,000.00 in rent, as well as obligations to continually operate the Station in order to sell Texaco branded petroleum products and merchandise. The Lease further provides that Plaintiff Chevron may terminate the lease in the event that Defendant Pérez-Rosado fails to operate the Station for a period of seven consecutive days, or otherwise fail to comply with the terms of the Lease.

Under the supply agreement ("Supply Agreement") entered into by Plaintiff and Defendant Pérez-Rosado, Defendant agreed to purchase Texaco gasoline and other Texaco products for resale to customers. The Supply Agreement grants Pérez-Rosado permission to use Texaco

CIVIL NO. 09-2080 (JP)            -3-

trademarks and trade names in connection with the sale of Texaco products.  Said agreement also requires Defendant Pérez-Rosado to comply with all applicable environmental laws and regulations.  The Supply Agreement further provides that Plaintiff may suspend the delivery of petroleum products and terminate the agreement in the event that Pérez-Rosado fails to comply with the terms of the agreement.

On April 14, 2009, Plaintiff Chevron entered into an additional agreement (the "Administrator Authorization"), this time with both Defendants, under which Defendant Pérez-Rosado obtained authorization from Chevron to permit Defendant Héctor Pérez to operate the Station. The Administrator Authorization did not excuse Defendant Pérez-Rosado from his obligations under the Lease and Supply Agreement.

Plaintiff alleges that Defendant Pérez-Rosado, through his own actions and those of Defendant Héctor Pérez, has repeatedly breached the Agreements.  Plaintiff alleges that Defendant has failed to pay Plaintiff Chevron for $20,000.00 of gasoline products delivered on June 15, 2009.  In addition, Defendant has allegedly failed to pay rent since June 2009.  Furthermore, Plaintiff alleges that Defendant Pérez-Rosado has breached the Lease Agreement by failing to operate the Station for a period of over sixty days.

As a result of the alleged breaches, Plaintiff sent Defendant Pérez-Rosado written notice of termination of the Agreements on August 7, 2009.  Said notice informed Defendant that the Agreements

CIVIL NO. 09-2080 (JP)            -4-

were being terminated pursuant to the terms of the Agreements as well as the rules established under the PMPA. The notice of termination requested that Defendant turn over control of the Station to Plaintiff. Currently, Defendants have allegedly failed to return control of the Station to Plaintiff. Instead, Defendants continue to use the premises to operate a store to sell groceries. Although Defendants are no longer authorized to sell, and are in fact not offering for sale Texaco gasoline, they allegedly continue to utilize the Texaco marks to attract customers.

Plaintiff has submitted evidence documenting its allegations regarding the contractual breaches and trademark violations. The evidence submitted by Plaintiff includes the Lease and the Supply Agreement, the Administrator Authorization, the termination letter, an invoice addressed to Defendant Pérez-Rosado listing an amount due of $20,600.00, and photographs of the station displaying the Texaco marks but stating no price for gasoline.

## II. **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct. United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952). The United States Court of Appeals for the First Circuit has set forth a four part test for trial courts to use when considering whether to grant preliminary injunction requests. Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999);

CIVIL NO. 09-2080 (JP)            -5-

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction. Narragansett Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n.2 (1st Cir. 1987).  Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others.  Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement. Aoude, 862 F.2d at 893.

### III. ANALYSIS

#### A. Motion for Preliminary Injunction

Plaintiff Chevron requests that the Court enter a preliminary injunction ordering Defendants to immediately surrender to Chevron the Station, including its underground storage tanks and equipment, and to comply with all post-termination covenants of the Agreements, including discontinuing use of the Texaco marks.  The Court shall

CIVIL NO. 09-2080 (JP)          -6-

now consider Plaintiff's arguments in light of First Circuit's preliminary injunction standard.

### 1.   Likelihood of Success on the Merits

#### a.   Plaintiff's Breach of Contract and PMPA Claims

Plaintiff argues that it is likely to succeed on the merits of its breach of contract and PMPA claims because Defendant has violated the terms of the Agreements, and because the PMPA requirements for termination of the Agreements and initiation of a civil enforcement action have been met.  The PMPA provides, in relevant part,

> Any franchisor may terminate any franchise . . . or may fail to renew any franchise relationship [for the following reasons, subject to certain timing and notification requirements] . . .
>
> (A) A failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled . . .
>
> (B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise . . .
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . .

15 U.S.C. § 2802(b)(2).  Although the PMPA ordinarily requires written notice to the franchisee ninety days in advance of a termination or non-renewal, it allows for a lesser period when ninety days is unreasonable under the circumstances.  15 U.S.C. § 2804.

In the instant case, Plaintiff has submitted evidence indicating that Defendant Pérez-Rosado has failed to pay Chevron rent and

CIVIL NO. 09-2080 (JP)            -7-

amounts owed for gasoline delivered, in excess of $20,000.00. As such, Plaintiff is likely to succeed in showing that cause for termination of the Agreements exists pursuant to the above-cited subsection (A), which lists failure to pay as a valid ground for termination.

Plaintiff also alleges that termination of the Agreements is reasonable due to Defendants' failure to continue selling gasoline at the Station. The PMPA specifically defines "an event . . . as a result of which . . . termination . . . of the franchise relationship is reasonable" as including "failure by the franchisee to operate the marketing premises for . . . 7 consecutive days." 15 U.S.C. § 2802(c)(9). The Court finds that Defendants' cessation of gasoline sales at the Station for a period of over sixty days creates a high likelihood that Plaintiff will succeed in showing that termination is also appropriate on the basis of failure to operate.

On August 7, 2009, Plaintiff notified Pérez-Rosado of the termination of the contractual relationship between the parties, effective ten days following the date of the notice. Given the seriousness of Defendant Pérez-Rosado's breaches by failure to pay and failure to operate, Plaintiff was entitled to provide less than the usual ninety days notice of termination. Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 28 (1st Cir. 1987) ("less than ninety days notice is permitted if reasonable under the circumstances and if notice is given on the earliest date on which furnishing such notice

CIVIL NO. 09-2080 (JP)             -8-

is 'reasonably practicable.'"); Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp., No. 09-cv-1105, 2009 WL 702226, at *4 (Pieras, J.) (finding likelihood of success on the merits of PMPA claim and noting that ninety day notice requirement may be excused when reasonable under the circumstances).

In light of the termination of the Lease, Defendants were no longer entitled to utilize the Station, and were therefore required to turn over control to Plaintiff. Plaintiff's evidence indicates that Defendants have not surrendered the Station as required. Under such circumstances, an injunction ordering dispossession is an appropriate remedy. Id. at *7. After examining the arguments and evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its breach of contract and PMPA claims.

### b.    *Plaintiff's Lanham Act Claims*

Chevron also argues that the facts demonstrate a likelihood of success on the merits of Plaintiff's claims brought pursuant to the Lanham Act, 15 U.S.C. § 1125(a). Section 1125(a) creates a cause of action for false designation of origin, false descriptions, and dilution. To prevail on a trademark claim under Section 1125(a), a plaintiff is generally required to establish that: (1) he uses and thereby owns a mark; (2) the defendant is using the same or a similar mark; and (3) the defendant's use is likely to confuse the public, thereby harming the plaintiff. Doral Pharmamedics, Inc. v. Pharm.

CIVIL NO. 09-2080 (JP)            -9-

Generic Developers, Inc., 148 F. Supp. 2d 127, 137 (D.P.R. 2001). The First Circuit has held that "the third element of the trademark cause of action, likelihood of confusion, is the central issue in finding trademark infringement." International Ass'n of Machinists and Aerospace Workers, 103 F.3d 196, 200 (1st Cir. 1996).

With regard to the first element, Plaintiff is the owner of the trademark "TEXACO" and the color combination, font, and design marks for its gasoline stations. Said marks have been registered in the United States Patent and Trademark Office under Registration Nos. 57,902, 794,947, 1,209,440, 2,259,016, 2,256,757, and related registrations.

With regard to the second element, Defendants' unauthorized use of the mark, Plaintiff has submitted photographs showing that Defendants continue to display the Texaco marks at the Station.

With regard to the third element, likelihood of confusion, the evidence indicates that potential customers have no way of knowing that Defendants' business is anything other than an authorized Texaco station. Plaintiff's photographs show that the Texaco brand name and the Texaco logo displayed prominently. Only after arriving at the Station do consumers learn that Defendants are no longer offering petroleum products for sale. Even then, consumers are likely to remain confused as to whether the retail store component of the business is an authorized Texaco store. On the basis of the evidence

CIVIL NO. 09-2080 (JP)            -10-

presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its Lanham Act claims.

### 2.  Irreparable Harm

The second factor in the preliminary injunction analysis is whether Plaintiff will suffer irreparable harm if the injunction is not granted.  Narragansett Indian Tribe, 934 F.2d at 5.  An injury will only be considered irreparable if no adequate remedy for the injury exists at law.  See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986).  Monetary damages are usually not considered irreparable injuries.  See DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998) (holding that a temporary loss of income which may be recovered later does not generally constitute irreparable injury).  It is not required that a plaintiff establish that denial of injunctive relief would be fatal to its business; it is sufficient for a plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (internal citations omitted).

Plaintiff contends that the ongoing unavailability of petroleum products at the Station is harming Plaintiff's market share and customer goodwill in Puerto Rico.  Plaintiff alleges that its market presence in the region has been developed over the course of nearly one hundred years, since 1911.  A loss of customer loyalty as a result of Defendants' actions could entail more than a temporary

CIVIL NO. 09-2080 (JP)           -11-

financial loss.  Rather, Plaintiff risks an ongoing reduction in market share due to consumers' opinion that the Station is not a reliable vendor of petroleum products.

Plaintiff also argues that, due to the termination of the Agreements, Chevron can no longer exercise a contractual right to monitoring and control of the underground tanks associated with the Station.  This scenario exposes Chevron to risks of environmental damage and liability in the event that Defendants neglect to maintain the tanks properly.  Considering these risks and the significant potential harm due to loss of market share, the Court finds that Plaintiff has adequately demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction.

### 3. Balance of Hardships

The third factor in the analysis for a preliminary injunction requires Plaintiff to show that the irreparable harm that Plaintiff will suffer in the absence of the entry of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on Defendant.  Narragansett Indian Tribe, 934 F.2d at 5.

In the instant case, the potential hardship to Defendants that would result from entry of a preliminary injunction is that Defendants would no longer be able to operate the retail sales of groceries at the Station's store.  This hardship offers a weak counterbalance to the ongoing irreparable injury being suffered by Plaintiff.  The evidence indicates that Defendants do not have a

CIVIL NO. 09-2080 (JP)            -12-

right to continue their business operations following the termination of the Agreements.  As such, Defendants' potential losses from discontinuation of the retail store operation are a result of Defendant Pérez-Rosado's own breaches of contract. Accordingly, the Court finds that the balance of hardships weighs strongly in favor of Plaintiff.

**4.   Public Interest**

The fourth and final factor in the preliminary injunction analysis requires the Court to consider whether the public interest will be adversely affected if the injunction is granted. Id. at 5. Here, the public interest is harmed when consumers are misled as to the source of the products being offered for sale at the retail store located in the Station.  In addition, the environmental risks from unmonitored petroleum storage tanks also negatively affect the public interest.  Finally, Defendants' ongoing failure to offer petroleum products for sale harms the public interest because motorists in the Isabela area are unable to purchase gasoline from the Station.  The Court notes that these risks are exacerbated by the fact that recently other service stations in Puerto Rico have similarly ceased operations due to the franchisee's noncompliance with contractual terms. See, e.g., Total Petroleum Puerto Rico Corp., 2009 WL 702226 (Pieras, J.).  In light of the potential harm to consumers and the public, the Court finds that the fourth factor further supports the entry of a preliminary injunction.

CIVIL NO. 09-2080 (JP)        -13-

## IV. CONCLUSION

In conclusion, the Court **GRANTS** Plaintiff's motion for a preliminary injunction. Defendants are hereby **ORDERED** to: (1) immediately surrender to Chevron the Station, including its underground storage tanks and equipment; (2) immediately comply with all other post-termination covenants of the Agreements; and (3) refrain from using the Texaco marks.  Plaintiff **SHALL** serve a copy of the complaint and this Opinion and Order upon Defendants, and **SHALL** file proof of service with the Court, on or before November 23, 2009.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of November, 2009.


                                            s/Jaime Pieras, Jr.
                                          JAIME PIERAS, JR.
                                    U.S. SENIOR DISTRICT JUDGE